**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
A.G.P./ALLIANCE GLOBAL PARTNERS, CORP.   :   CASE NO. _____

    **Plaintiffs,**   :

    -against-   :   **COMPLAINT**

**COCRYSTAL PHARMA, INC.**   :

    **Defendant.**   :
------------------------------------------------------------------------X

Plaintiff A.G.P./Alliance Global Partners Corp. ("Plaintiff" or "AGP"), by and through their undersigned counsel, files this Complaint against Defendant Cocrystal Pharma, Inc. ("Defendant" or "Cocrystal") and alleges:

### NATURE OF ACTION

1. Since 1980, AGP has been an investment bank and wealth management firm that is a broker-dealer registered with the United States Securities and Exchange Commission ("SEC") and is a member of the Financial Industry Regulatory Authority ("FINRA"). Through its eleven offices throughout the United States, AGP regularly assists public and private companies with capital raising, corporate finance and corporate advisory services, specializing in small and middle-market institutions.

2. Over the last forty years, AGP has earned its reputation for providing its clients with its market expertise and deep, industry-specific knowledge. This proven track record of success has created long-lasting client relationships to AGP's benefit.

3. Cocrystal is a clinical stage biotechnology company with common stock that trades on the Nasdaq Capital Market under the symbol "COCP."

1

4. Since in or about July 2018, AGP has acted as Cocrystal's underwriter, placement agent and financial advisor, including advising Cocrystal in connection with meeting the Nasdaq listing requirements, which enabled its common shares to commence trading on the Nasdaq in 2018.

5. On January 29, 2020, AGP and Cocrystal entered into an agreement pursuant to which AGP agreed to serve as placement agent (the "Placement Agreement") for the sale of $2,200,000 of Cocrystal's common stock in a public offering (the "AGP 2020 Public Offering").

6. The terms of the Placement Agreement prohibited Cocrystal from issuing any securities without AGP's consent until June 10, 2020.

7. Cocrystal materially and willfully breached its contractual obligations to AGP under the Placement Agreement in February and March 2020 when it sold $18 million of its common stock through the placement agent H. C. Wainwright & Co, LLC. ("Wainwright") without AGP's consent, notwithstanding the fact that AGP offered Cocrystal terms that were far more favorable to Cocrystal (and its shareholders)

8. Cocrystal's breach of the Placement Agreement has caused AGP to suffer monetary injury exceeding $1.3 million ($1,300,000).

## THE FACTS

**Background**

9. Pursuant to an underwriting agreement dated April 30, 2018 (the "U/W Agreement"), AGP acted as lead underwriter for Cocrystal in its $8,000,000 public offering for the sale of 4,210,527 shares of its common stock at $1.90 per share.

10. The U/W Agreement provided that the Company would not, among other items, issue or sell any of its common shares for a period of 90 days following the closing without the

express written consent of AGP. The rights provided to AGP by the U/W Agreement are referred to herein as the "AGP U/W Agreement Rights."

11. In July 2018, Cocrystal entered into an Equity Distribution Agreement (the "Distribution Agreement") with Ladenburg Thalmann & Co. Inc. ("Ladenburg"), Barrington Research Associates, Inc. ("Barrington"), and AGP to sell up to $10,000,000 of shares of Cocrystal common stock.

12. Prior to entering into the Distribution Agreement and as required pursuant to the AGP U/W Agent Rights, Cocrystal requested, and AGP agreed to, a one-time waiver of the AGP U/W Agent Rights.

13. On or about March 11, 2019, Cocrystal and AGP executed an agreement whereby AGP agreed to act as Cocrystal's placement agent for the sale of $4,181,958 of shares of Cocrystal common stock.

14. On August 1, 2019, Cocrystal and AGP executed an engagement agreement whereby AGP agreed to be the lead underwriter and investment banker for Cocrystal's public offering of up to $12,000,000 of Cocrystal's securities (the "Engagement Agreement").

15. Section B of the Engagement Agreement, entitled "<u>Term and Termination of Engagement</u>" provides: "[t]he term ("Term") of A.G.P.'s engagement will begin on [August 1, 2019] and end on the earlier of the consummation of the [Public] Offering or 45 days after the receipt by either party hereto of the written notice of termination."

16. Pursuant to the Engagement Agreement, AGP was lead underwriter or placement agent for any Cocrystal offering until the consummation of the twelve-million dollar ($12,000,000) offering or forty-five days after notice of termination of the Engagement Agreement.

17. Subsequent to the execution of the Engagement Agreement, AGP informed Cocrystal there was enough investor demand for the public offering of approximately five million dollars ($5,000,000) of Cocrystal common stock.

18. Cocrystal declined to pursue that transaction with AGP.

19. Upon information and belief, in October 2019, Cocrystal was informed by Aegis Capital Corp. ("Aegis"), an unrelated investment bank, that it would underwrite a ten-million dollar ($10,000,000) issuance of Cocrystal common stock.

20. Because the Engagement Agreement prohibited Cocrystal from accepting Aegis's offer, in October 2019, Cocrystal requested AGP's consent to terminate the Engagement Agreement.

21. On October 15, 2019, AGP agreed to terminate the Engagement Agreement and waive its forty-five day notice provision.

22. On October 30, 2019, Cocrystal and Aegis entered into an underwriting agreement pursuant to which Aegis purchased and sold to the public 3,529,412 shares of Cocrystal common stock for approximately three million dollars ($3,000,000) (the "Aegis Underwriting Agreement").

23. Section 3.19.1 of the Aegis Underwriting prohibited Cocrystal from offering, selling or contracting to sell any of its capital stock without Aegis's consent for 180 days.

24. In late January 2020, AGP and Cocrystal began negotiations for AGP to act as placement agent in connection with a registered offering of $2,200,000 of Cocrystal common stock.

25. Due to the lock-up provision in the Aegis Underwriting Agreement, before AGP and Cocrystal could enter into a contract of the sale of its common stock, Cocrystal needed to obtain a waiver of the lock-up provision from Aegis.

26. On January 29, 2020, Aegis and Cocrystal executed a one-time waiver that permitted Cocrystal to sell $2,200,000 of its common stock at $.63 per share.

27. On January 29, 2020, AGP and Cocrystal entered into an agreement pursuant to which AGP agreed to serve as placement agent (the "Placement Agreement") for the sale of $2,200,000 of Cocrystal's common stock in a public offering (the "AGP 2020 Public Offering"). The Placement Agreement is attached hereto as Exhibit ("Ex.") A.[1]

28. On or about January 29, 2020, Cocrystal also entered into two separate Securities Purchase Agreements (the "Purchase Agreements") for the sale of 3,492,063 Cocrystal shares of common stock at a public offering price of $.63 per share to purchasers introduced by AGP pursuant to the Placement Agent Agreement. Copies of the Purchase Agreements are annexed hereto as Ex. B.

29. Section 4.12 of the Purchase Agreement is a lock-up provision (the "Lock-Up Provision") whereby Cocrystal and AGP agreed:

> (a) From the date hereof until 90 trading days after the Closing Date,[2] neither the Company nor any subsidiary shall issue, enter into any agreement to issue or announce the issuance or proposed issuance of any Common Stock or Common Stock Equivalent.[3]

30. The Lock-Up Provision's ninety (90) Trading Day period expires on June 10, 2020.

31. For the benefit of AGP, Section 1 of the Placement Agreement incorporates by reference the Purchase Agreement, including, but not limited to, the Lock-Up Provision.

32. Section 1 provides:

> With respect to the Placement Agent Securities, [the shares sold in the AGP 2020 Public Offering] each of the representations and

---

[1] Ex. A is in the format used by Defendant when filing its Form 8-K filed with the Securities Exchange Commission on January 31, 2020 to disclose the public offering.
[2] The closing date was February 3, 2020..
[3] Section 1.1 of the Purchase Agreement defines "Trading Day" "Closing Day", "Common Stock" "Common Stock Equivalent", and "Exempt Issuance." *See* Ex. B, p. 1-5.

5

> warranties (together with any related disclosure schedules thereto) and covenants made by the Company [Cocrystal] to the Purchasers in the Purchase Agreement in connection with the Placement, [the 2020 Public Offering] <u>is hereby incorporated herein by reference into this Agreement (as though fully reinstated herein) and is, as of the date of this Agreement and as of the Closing Date, hereby made to, and in favor of, the Placement Agent [AGP]</u>.

Ex A, pp. 1-2 (Emphasis added).

33. As illustrated by the Lock-Up Provision, the AGP U/W Agreement Rights and the Aegis Underwriting Agreement (Section 3.19.1), it is standard practice in the investment banking industry that agreements to underwrite or place securities have terms that prohibit the issuer from issuing securities for a customary period of time following the agreed to underwriting or placement of securities.

34. In order for AGP to enter into the Placement Agreement and place the Cocrystal shares, it was essential that Cocrystal agree (subject to certain non-applicable exceptions) to the Lock-Up Provision in the Purchase Agreement and its incorporation by reference into the Placement Agreement.

35. The purpose of the Lock-Up Provision was to protect AGP from competitors (like Wainwright) who would seek to "piggy-back" on the work done by AGP in structuring the deal and introducing investors to Cocrystal.

**Cocrystal Announces Licensing Agreement**
**To Make and Sell Therapeutics, Diagnostics and Prophylactics to Battle Coranavirus.**

36. In early to mid-February 2020, when the United States public and capital markets were beginning to grasp the possibility of a large scale Covid-19 outbreak in the United States, Cocrystal common stock was trading at a price near its historical low. For example, between February 18 through February 24, 2020, Cocrystal common stock publicly traded in a range of $0.47 to $0.57, with an average daily trading volume of 400,475 shares.

37. On February 24, 2020, Cocrystal filed a Form 8-K wherein it disclosed that it:

> entered into a License Agreement … with Kansas State University Research Foundation … effective February 12, 2020. Pursuant to the terms of the Agreement, the Foundation granted the Company an exclusive for human use royalty bearing license to practice under certain patent rights, including a patent and patent application covering antivirals against <u>coronaviruses</u> and norovirus, and related know-how, to make and sell therapeutic, diagnostic and prophylactic products.

(Emphasis added.)

38. On February 24, 2020, Cocrystal common stock hit a daily high of $1.57 with 81,095,900 shares traded on the Nasdaq exchange.

39. On February 25, 2020, Cocrystal common stock hit a daily high of $2.50 with 74,751,300 shares traded.

40. Shortly after Cocrystal's announcement of its License Agreement, AGP reached out to Cocrystal to determine whether it was interested in raising additional capital through another common stock issuance of approximately $11,500,000 at a price per share of $1.50.

41. Cocrystal responded that it was not interested in raising capital, but that it would contact AGP when Cocrystal was interested in raising additional capital.

42. Cocrystal also stated that a capital raise at $1.50 per share was too low of a price.

43. Nevertheless, approximately one day later, on February 27, 2020, Cocrystal issued a press release announcing it entered into definitive agreements with institutional investors to sell 8,461,540 shares of its common stock for $11,000,000 at a purchase price of $1.30 per share in a public offering through Wainwright, the exclusive placement agent of the offering (the "Wainwright First Offering"), and that the sale was expected to close on Monday, March 2, 2020.

44. The institutional investors who participated in the Wainwright First Offering were the same investors who AGP introduced to Cocrystal in the AGP 2020 Public Offering.

45. In other words, by doing an end-run around AGP, Cocrystal engaged in the exact misconduct that the Lock-Up Provision was intended to prevent.

46. Upon information and belief, prior to the First Wainwright Offering, Cocrystal offered significant monetary compensation to the investors who participated in the AGP 2020 Pubic Offering if they waived the Lock-Up Provision in the Placement Agreement, and the investors agreed.

47. Cocrystal did not make a similar, or any, offer to AGP to waive the Lock-Up Provision despite AGP also being a beneficiary of the Lock-Up Provision.

48. Wainwright received compensation of 7.5% of the aggregate purchase price of $11,000,000 ($825,000), in addition to expenses, including legal fees of its legal counsel and clearing fees of $87,900.

49. Upon information and belief, Cocrystal also granted Wainwright a lock-up provision similar to that provided to AGP.

50. By agreeing to and issuing stock pursuant to the First Wainwright Offering, Cocrystal violated the Lock-Up Provision in the Purchase Agreement, which is incorporated by reference into the Placement Agreement.

51. By entering into an agreement with Wainwright and closing the First Wainwright Offering, Cocrystal willfully and intentionally breached material terms in the Placement Agreement, including the Lock-Up Provision, which does not expire until June 10, 2020.

52. On or about February 28, 2020, counsel for AGP informed Cocrystal that the First Wainwright Offering was impermissible. Cocrystal did not initially respond to the communication.

53. Cocrystal common stock closed at $1.40 per share on Friday, March 6, 2020 with 10,008,800 shares traded.

54. Immediately after the close of the market, at 4:01 p.m. on March 6, 2020, Cocrystal issued a press release: "Cocrystal Pharma Announces Plans to Advance Coronavirus Program."

55. On March 6, 2020, counsel for AGP again wrote to Cocrystal to inform it that the First Wainwright Offering violated AGP's contractual rights.

56. In response, on March 6, 2020, Cocrystal's counsel asserted that AGP has no grounds to commence a lawsuit against Cocrystal.

57. On Monday, March 9, 2020, Cocrystal's common stock opened on the Nasdaq at $1.70 per share and hit a high of $2.24 per share with 43,506,865 shares traded.

58. Later in the day of March 9, 2020, Cocrystal issued a press release announcing another offering with Wainwright as the underwriter (the "Second Wainwright Offering" and with the First Wainwright Offering, the "Wainwright Offerings.") for the purchase of 5,037,038 shares of Cocrystal common stock at a price of $1.35 per share for aggregate gross proceeds of $6.8 million.

59. Wainwright received compensation of 7.5% of the aggregate purchase price of $6,800,000 ($510,000), in addition to expenses and clearing fees of $87,900.

60. By entering into an agreement with Wainwright and closing the Second Wainwright Offering, Cocrystal again willfully and intentionally breached material terms in the Placement Agreement, including the Lock-Up Provision.

61. Upon information and belief, Cocrystal, having previously obtained waivers from both AGP in October 2019 and Aegis in January 2020 and investors in February 2020 in order to issue shares of common stock that would have otherwise been impermissible pursuant to similar

lock-up provisions, consummated the Wainwright Offerings knowing that they breached the Lock-Up Provision causing AGP substantial monetary injury.

62. Pursuant to the Lock-Up Provision incorporated by reference into the Placement Agreement, in order for Cocrystal to permissibly issue 16,037,038 shares of its common stock for gross proceeds in excess of $17,800,000 in February and March 2020 in the Wainwright Offerings it was required to (i) retain AGP to act as lead underwriter for the transactions or (ii) obtain AGP's written consent to proceed with the issuances.

63. Cocrystal did neither.[4]

## THE PARTIES

64. Plaintiff is a corporation organized under the laws of California with its principal place of business at 590 Madison Avenue, 28th Floor, New York, New York 10022.

65. Defendant is a corporation organized under the laws of Delaware with its principal place of business at 19805 North Creek Parkway, Bothell, Washington 98011.

## JURISDICTION AND VENUE

66. The Court has jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and Defendant and the amount in controversy exceeds the jurisdictional threshold of $75,000, excluding interests and costs.

67. Venue is proper in this district under 28 U.S.C. § 1391 because Plaintiff resides in this district, Defendant does business in New York, and a substantial part of the events and wrongful conduct occurred in this district.

---

[4] This is not the first time Cocrystal engaged in breaching lock-up agreements with underwriters who have raised Cocrystal funds. In March 2020, Aegis commenced a lawsuit against Cocrystal alleging that the Wainwright Offerings breached a contract that contained a similar lock-up provision. *See Aegis Capital Corp. v. Cocrystal Pharma Inc.* 20-cv-1986 (SDNY). The lawsuit with Aegis was settled when Cocrystal paid "Aegis an undisclosed material amount." Cocrystal Form 8-K filed on March 13, 2020.

68. Personal jurisdiction over Defendant is also proper in the United States District Court for the Southern District of New York because Cocrystal irrevocably consented in the Placement Agreement to jurisdiction in this district and waived any objection that this district does not have exclusive jurisdiction or is an inconvenient forum.

## COUNT I

### BREACH OF CONTRACT – THE PLACEMENT AGREEMENT

69. Plaintiff incorporates by reference all of the foregoing allegations as if fully reiterated herein.

70. The Placement Agreement is a valid and enforceable agreement, which incorporates by reference the terms of the Purchase Agreement, including the Lock-Up Provision.

71. The Lock-Up Provision is a valid and enforceable term of the Placement Agreement.

72. The Placement Agreement permits the recovery of reasonable attorneys' fees and expenses to the prevailing party in any action necessary to enforce the terms of the Placement Agreement.

73. AGP did not consent to the Wainwright Offerings wherein Cocrystal issued 16,037,038 shares of its common stock for gross proceeds in excess of $17,800,000.

74. Cocrystal breached the Placement Agreement by entering into and consummating the Wainwright Offerings without obtaining AGP's consent.

75. Cocrystal's breach directly and proximately caused AGP to suffer damages that far exceed the jurisdictional amount, believed to exceed $1,000,000.

76. Cocrystal directly and proximately caused APG to incur additional damages, including substantial legal fees and costs, as well as other monetary and non-monetary damages to be established at trial.

## COUNT II

## DECLARATORY RELIEF

77. Plaintiff incorporates by reference all of the foregoing allegations as if fully reiterated herein.

78. The Court should enter an Order declaring that the Placement Agreement is a valid and enforceable contract.

79. The Court should enter an Order declaring that the Lock-Up Provision contained in the Purchase Agreement is incorporated by reference into the Placement Agreement, and therefore is a valid and enforceable term of the Placement Agreement.

80. The Court should enter an Order declaring that any issuances of Cocrystal capital stock occurring between January 29, 2020 and June 10, 2020, without the consent of AGP is a violation of the Placement Agreement.

81. The Court should enter an Order declaring Cocrystal liable for damages to AGP in the amount to be proven at trial as a result of Defendant's breach of the Placement Agreement.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs prays for relief and judgment, including:

Monetary damages in favor of Plaintiff and against Defendant in an amount to be determined at trial, but believed to be in excess of $1,000,000;

Awarding Plaintiffs its costs and expenses incurred in this action, including its reasonable attorneys' fees, as set forth in the Placement Agreement; and

Granting such other and further relief as may be just and proper.

Dated: May 19, 2020
New York, New York

GUSRAE KAPLAN NUSBAUM PLLC

/s/Ryan Whalen
Ryan Whalen
Kari Parks
120 Wall Street
New York, New York 10005
(212) 269-1400
rwhalen@gusraekaplan.com
kparks@gusraekaplan.com

*Attorneys for Plaintiff*