UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/22/2020
```

A.G.P./ALLIANCE GLOBAL PARTNERS, CORP.,

Plaintiff,

                - against -

COCRYSTAL PHARMA, INC.,

Defendant.

20 Civ. 3901 (LLS)

**OPINION & ORDER**

     In this breach of contract case, defendant Cocrystal Pharma, Inc. ("Cocrystal") moves to dismiss plaintiff A.G.P./ Alliance Global Partners Corp. ("AGP")'s Complaint (Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

     For the following reasons, the motion (Dkt. No. 12) is denied.

### BACKGROUND[1]

     On January 29, 2020, AGP and Cocrystal entered into a Placement Agreement, pursuant to which AGP agreed to serve as placement agent for the sale of $2,200,000 shares of Cocrystal's common stock in a public offering at a purchase price of $0.63 per share. Compl. ¶ 5; see Compl. Ex. A (the Placement Agreement).

     The Placement Agreement incorporated, by reference, the representations and warranties Cocrystal had made to the

---

[1]    The background is derived from plausible facts alleged in the complaint, which the Court must accept as true in considering defendant's motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

purchasers of stock in the Placement.

Cocrystal made securities purchase agreements ("SPAs") with investors "for the sale of 3,492,063 Cocrystal shares of common stock at a public offering price of $.63 per share to purchasers introduced by AGP pursuant to the Placement Agent Agreement." Compl. ¶ 28; see id. Ex. B (the SPA). Those SPAs contained an "anti-dilution" or "lock-up" provision which states

> From the date hereof until 90 trading days after the Closing Date, neither the Company nor any Subsidiary shall issue, enter into any agreement to issue or announce the issuance or proposed issuance of any Common Stock or Common Stock Equivalents.

Section 4.12(a). The closing date was February 3, 2020.

Plaintiff AGP was not a party to the SPAs, but it was the placement agent for the shares sold in the SPAs.

On February 24, Cocrystal publicly disclosed that it had entered into a License Agreement with Kansas State University Research Foundation, which granted Cocrystal "an exclusive for human use royalty bearing license to practice under certain patent rights, including a patent and patent application covering antivirals against coronaviruses and norovirus, and related know-how, to make and sell therapeutic, diagnostic and prophylactic products." Compl. ¶ 37 (emphasis in original).

That day, Cocrystal's common stock price reached a daily high of $1.57; the next day, it reached a daily high of $2.50.

40. Shortly after Cocrystal's announcement of its License Agreement, AGP reached out to Cocrystal to determine whether it was interested in raising additional capital through another common stock issuance of approximately $11,500,000 at a price per share of $1.50.

41. Cocrystal responded that it was not interested in raising capital, but that it would contact AGP when Cocrystal was interested in raising additional capital.

42. Cocrystal also stated that a capital raise at $1.50 per share was too low of a price.

Compl. ¶¶ 40-42.

On February 27, Cocrystal announced that it had agreed to sell $11,000,000 of its common stock, at a purchase price of $1.30 per share, in an offering with H. C. Wainwright & Co, LLC. ("Wainwright") as the placement agent. On March 9, Cocrystal announced another offering with Wainwright as the underwriter for the sale of $6,800,000 of its common stock at a purchase price of $1.35 per share.

To accomplish those offerings, Cocrystal paid the investors in the January 29 placement to waive the anti-dilution provision, which they did.

On May 19, AGP filed its complaint, claiming that the anti-dilution provision is incorporated by reference into the Placement Agreement, and that Cocrystal breached the Placement Agreement by violating the anti-dilution provision when, in February and March of 2020, it sold its common stock through

-3-

Wainwright within 90 trading days of the AGP offering's February 3, 2020 closing date.

Cocrystal moves to dismiss the suit. It argues that the anti-dilution provision was not incorporated into the Placement Agreement. It also argues that even if there were a breach, any damages are speculative and outside the parties' contemplation.

### DISCUSSION

The determination whether Cocrystal violated the anti-dilution provision depends on whether it was incorporated by the Placement Agreement incorporation provision, which states

> With respect to the Placement Agent Securities, each of the representations and warranties (together with any related disclosure schedules thereto) and covenants made by the Company to the Purchasers in the Purchase Agreement in connection with the Placement, is hereby incorporated herein by reference into this Agreement (as though fully restated herein) and is, as of the date of this Agreement and as of the Closing Date, hereby made to, and in favor of, the Placement Agent.

Placement Agreement § 1.A.

"Placement Agent Securities" is a defined term. It is defined in the Placement Agreement as "the shares actually placed by the Placement Agent" under the same registration statement. (See Placement Agreement, p.1)

Thus, when the incorporating paragraph (quoted above) starts with the words "with respect to the Placement Agent Securities," it referred to the stock placed by AGP in that

-4-

offering.

In view of its opening phrase "With respect to the
Placement Agent securities," Cocrystal argues that "only those
representations, warranties, and covenants made by Cocrystal in
connection with the shares actually placed in the Initial
Offering are incorporated by reference" into the Placement
Agreement, and excludes the anti-dilution covenant because it
involves a later, unrelated offering, not this one. (Def.'s Mem.
at 6) ("only promises of future conduct that are not in
connection with the shares actually placed in the initial
offering." (id. at 4)).

But it is apparent that the covenant is in fact directly
and closely connected with the Initial Offering shares: it
protects their value from being reduced by entry into the market
of a mass of similar common stock.

Cocrystal at times seems to argue that the incorporation
gave no anti-dilution rights to AGP, which held no Placement
Agent Securities, and thus nothing to be diluted. Any such idea
is baseless, as the incorporation provision states that each
warranty and covenant "is hereby made to, and in favor of, the
Placement Agent."

\*       \*       \*

In short, the situation was admirably summarized by

-5-

Cocrystal's own January 13, 2020 Prospectus Supplement, stating that its

> . . . directors, executive officers, and certain
> stockholders have entered into lock-up agreements.
> Under these agreements, these individuals have agreed,
> subject to specified exceptions, not to sell or
> transfer any shares of common stock . . . during a
> period ending 30 days after the date of this
> prospectus supplement, without first obtaining the
> written consent of A.G.P./Alliance Global Partners.
>
> We have also agreed, subject to certain
> exceptions, not to sell any of our securities or enter
> into any agreements for the same for a period of 90
> days after the closing date.

Whalen Dec'l, Ex. 1 at S-16.

                        *       *       *

The parties have made submissions on whether AGP, holding no securities affected by the anti-dilution covenant or its breach, can prove damages.

Breach of contract produces at least nominal damage, and there are a variety of ways to attempt to show consequential damages. In this case, that might start with an evaluation of the price that would have to be paid to AGP to waive the "lock down" and to consent.

The motion to dismiss the complaint (Dkt. No. 12) is denied.

So ordered.

Dated:    New York, New York
          December 22, 2020

                                _Louis L. Stanton_
                                LOUIS L. STANTON
                                U.S.D.J.

-6-